# United States District Court
# For the District of Maryland

CIVIL ACTION NO.:   21 CV 2506  PWG

Dee Deidre Farmer

    2667 Edmondson Avenue

    Baltimore, MD 21223

    Plaintiff,

            -vs-

University of Maryland Global Campus

    3501 University Boulevard

    Adelphi, MD 20763

    Defendant.



_____ FILED          ENTERED
_____ LODGED _____ RECEIVED

SEP 3 0 2021

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                          DEPUTY

## _CIVIL RIGHTS COMPLAINT_

Plaintiff Dee Deidre Farmer, without the benefit of counsel, brings this civil action against Defendant University of Maryland Global Campis, pursuant to Title 28, United States Code, Section 1983, seeking injunctive relief and monetary damages.  In support thereof Plaintiff Farmer states as follows:

## I.
## Introduction

1.  Plaintiff Farmer is an undergraduate student at the University of Maryland Global Campus ("UMGC" or "Defendant UMGC").  Shortly

before becoming a student at UMGC, Plaintiff Farmer was incarcerated within the Federal Bureau of Prisons, where she was receiving treatment for her serious medical conditions and psychiatric disorders.  Of course, there were limits on the types and deliveries of treatments that Plaintiff Farmer could receive while incarcerated. Thus, when Plaintiff Farmer was released and commenced receiving treatment at a community hospital the changes that were made to her care and treatment were inevitable. The effects of those changes could not be predicted with certainty; though unexpected adverse effects

were deemed improbable.
However, when a change was made
to Plaintiff Farmer's psychiatric
treatment she suffered unexpected
adverse effects, which affected her
performance in one of her classes at
UMGC.  Thus, Plaintiff Farmer filed a
request for forgiveness, in relation
to financial aid, for her
unsatisfactory performance in that
class, which was caused by the
adverse effects consequences to the
change in her psychiatric treatment.
This request was denied by
Defendant UMGC because the
information given, it said, was
unclear as to the dates of the
change and it's affects.   Plaintiff

Farmer and her psychiatrist strongly disagreed with these alleged facts.

2.   Nevertheless, Plaintiff Farmer reenrolled the next semester without financial aid.  During this term, Plaintff Farmer's assigned medical specialist at the community hospital left and another specialist was assigned as her doctor.  This newly assigned doctor felt that significant changes needed to be made to Plaintiff Farmer's medical treatment, including her primary medications.  This new doctor did make such changes, which consequently were, unexpectedly, debilitating.  Again, Plaintiff Farmer's performance in one of her

classes at UMGC was negatively impacted.  And again, she filed a request for forgiveness, in relation to financial aid.   Defendant UMGC rejected this request because Plaintiff Farmer's previous request, as described above, was also about a "similar" issue.

3.   Plaintiff Farmer alleges and asserts that her and other students who submit a subsequent request for forgiveness, in relation to financial aid, based on similar occurrences that adversely affected their performance, in a different class during a different semester, are no different than those students who

submit a subsequent request for forgiveness, in relation to financial aid, based on unsimilar occurrences that  adversely affected their performance in a different class during a different semester.  Thus, Plaintiff Farmer alleges and asserts that Defendant UMGC's different treatment of these similarly situated groups violates her privileges and rights guaranteed by the Constition, laws and statutes of the United States as well as the State of Maryland.

4.   Plaintiff Farmer seeks injunctive relief and monetary damages.

# II.
# Parties

5.   Plaintiff Dee Deidree Farmer is an undergraduate student at the University of Maryland Global Campus, who is reliant upon financial aid.   Shortly before becoming a student at UMGC, Plaintiff Farmer was incarcerated at the Federal Medical Center in Butner, North Carolina, which is owned and operated by the Federal Bureau of Prisons.  There, Plaintiff Farmer received limited treatment for her diagnosed serious medical diseases and psychiatric conditions.

6.   Plaintiff Farmer is of legal age and competent to testify.

7.   Defendant University of Maryland Global Campus is an educational institution of higher learning for students seeking undergraduate or graduate degrees. Defendant UMGC manages and distributes financial aid to its qualified students.  UMGC is owned and operated by the State of Maryland.

## IV.

## Jurisdiction

8.   This Court has subject matter jurisdiction under 20 U.S.C. 1331 and 42 U.S.C. 1983.

9.   This Court has venue jurisdiction pursuant to 28 U.S.C. 1391 and 42 U.S.C. 1983.

## V.
## Facts

10. During February of 2021, Plaintiff Farmer began classes at the University of Maryland Global

Campus, which was paid for through financial aid.

11. Prior to Plaintiff Farmer beginning classes at UMGC, she was incarcerated at the Federal Medical Center in Butner, North Carolian, which is a penal institution owned and operated by the Federal Bureau of Prisons, an agency of the United States Department of Justice.

12. While confined at said institution, as identified above, Plaintiff Farmer received treatment for diagnosed serious medical diseases and psychological disorders.

13. On or about February 17, 2021, Plaintiff Farmer commenced a class at UMGC, which was entitled Academic Writing 111.

14. The Writing 111 class, noted above, was scheduled to end in April of 2021.

15. Plaintiff Farmer's prior college experience was one semester at the University of Wisconsin University College, which was over 20 years ago and before the advent of online learning.

16. Plaintiff Farmer did not know how to navigate UMGC's online classroom.

17. Particularly, Plaintiff Farmer had difficulty reading and completing her Writing 111 class assignments due to her medical condition of legal blindness and inability to adjust the magnification for the UMGC Online Classroom.

18. Plaintiff Farmer frequently sought assistance with her difficulties navigating UMGC's online classroom from UMGC's Success Coaches and technical support team.

19. Plaintiff Farmer also could not see the icons on the computer itself; thus, not knowing where to click and not to click-- often guessing-- created computer malfunctions requiring technical support from Geek Squad at cost.

20. Plaintiff Farmer was diagnosed with several serious incurable medical diseases and psychological disorders over a decade ago.

21. At all times during her attendance at UMGC, Plaintiff Farmer suffered from diagnosed medical diseases and psychological disorders.

22. Some of Plaintiff Farmer's medical conditions and psychological disorders are a consequence of her of her primary medical disease.

23. Plaintiff Farmer suffered from serious medical diseases and psychological disorders during her attendance at UMGC as many of her conditions are permanent.

24. When Plaintiff Farmer began attending classes at UMGC she was prescribed, amongst other things, psychiatric medications for her psychological disorders and narcotic

pain medication for my medical conditions.

25. Some of these prescribed medications impeded Plaintiff Farmer's ability to focus and comprehend her class assignments.

26.  Plaintiff Farmer contacted the instructor for her Writing 111 course and requested additional time to complete her assignments.

27. In response to Plaintiff Farmer's request, described at par. 26 above, she was informed by the instructor for the Writing 111 class that she

could not be given additional time to complete her assignments and that late assignments would not be accepted.

28. Plaintiff Farmer also discussed her difficulties, as described above, with her treatment team at the community hospital.

29. Plaintiff also sought assistance through the Maryland Department of Rehabilitation.

30. Plaintiff also sought assistance from UMGC's Accessibility Services.

31. In response to Plaintiff Farmer's actions, as described at par. 28 above, the mental health specialist at the community hospital adjusted and changed some of the psychiatric medication prescribed for Plaintiff Farmer.

32. One of the changes to Plaintiff Farmer's prescribed psychiatric medications caused adverse symptoms, which were unexpected.

33. The adverse symptoms caused by the change to Plaintiff Farmer's psychiatric medication, as described at par. 31 and 32 above, negatively

impacted her abilities to complete her Writing 111 class assignments.

34. For the reasons stated at par. 30 through 33 above, Plaintiff Farmer received an unsatisfactory grade in her Writing 111 class.

35. The unsatisfactory grade, as described at par. 34 above, effected Plaintiff Farmer's eligibility for continued financial aid.

36. Plaintiff Farmer filed a Satisfactory Academic Progress (SAP) appeal seeking forgiveness of her

unsatisfactory grade in her Writing 111 class.

37. Plaintiff Farmer doctors at the community Hospial were able to find and prescribe appropriate psychiatric medication, Maryland Department of Rehabilitation did approve Plaintiff Farmer for services, and UMGC's Accessibility Services did arrange for her to receive more time to complete her class assignments. These developments resolve, after the fact, the difficulties, as noted above, Plaintiff Farmer experienced during the time of her Writing 111 class.

38. UMGC denied Plaintiff Farmer's SAP Appeal, it said, due to its inability to determine the dates on which the occurrences underlying the appeal occurred.

39. As a direct consequences of Defendant UMGC's actions, as described at par. 39 above, Plaintiff Farmer could not continue to receive financial aid.

40. For the semester following Defendant UMGC's actions, as described at par. 37 above, Plaintiff Farmer continued to take classes at UMGC by developing a payment

plan with the school, which she paid.

41. During the next semester, as identified above, the specialist, who was Plaintiff Farmer's primary care provider at the community hospital left that hospital to take another position elsewhere; and another specialist was assigned as Plaintiff Farmer's primary care provider.

42. The new specialist, as identified at par. 40 above, considered Plaintiff Farmer's medication regimen for her primary medical disease to be outdated and unnecessarily

burdensome as well as unduly time consuming.

43. On June 3, 2021, Dr. Jill Crank, who is Plaintiff Farmer's new specialist at the community hospital, changed her primary antiviral medication, Fuseon, to Rukobia.

44. On or about June 10, 2021, Plaintiff Farmer picked-up this new medication from the Bartlett Pharmacy at Johns Hopkins Hospital and commenced taking it immediately.

45. On June 13, 2021, Plaintiff Farmer started having trouble focusing and concentrating. Plaintiff Farmer also was nauseated and sweating heavily. She felt weak and had labored breathing.

46. By June 16, 2021 (3 days later), when Plaintiff Farmer started her Humanities 100 6983 class, these symptoms had intensified. However, Dr. Crank advised her to not stop taking the medication as she had few other options. Thus, Plaintiff Farmer continued taking the medication until the end of July. At the time, Plaintiff Farmer reported

to Dr. Crank that she was stopping the medication as she would rather be dead than be sick every day.

47.  At the time that Plaintiff Farmer discontinued taking the new medication, resulting in Dr. Crank discontinuing the medication and ordering another medication, Plaintiff Farmer's Humanities 100 6983 class had ended.

48.  On August 16, 2021, Plaintiff Farmer was still suffering similar symptoms because she did not have any antiviral medications to take; though Dr. Crank re-prescribed and

ordered Fuzeon on July 27, 2021, it was not approved by Plaintiff Farmers insurance provider, Priority Partners, until August 18, 2021.

49. On or about August 20, 2021, after Plaintiff Farmer had received the Fuzeon and commenced taking it. Consequently, she reported to Dr. Crank that she was feeling much better and that she was excited about being able to resume participation in classes at UMGC.

50. Unfortunately, the adverse symptoms from the new medication and the absence of an immediate replacement medication negatively

affected Plaintiff Farmer's performance in her Humanities 100 6983 class and she was given an unsatisfactory grade, which would caused her to continue to be unable to receive financial aid.

51. Plaintiff Farmer filed another SAP (Satisfactory Academic Progress) Appeal seeking forgiveness of her unsatisfactory grade in her Humanities 100 6983 class, as it related to her eligibility for financial aid.

52. Defendant UMGC rejected Plaintiff Farmer's SAP Appeal, as identified at par. 51 above, because it was

"similar" to her previous SAP Appeal, as identified in par. 36 above.

53. Defendant UMGC does not reject SAP Appeals submitted by students who have received unsatisfactory grades affecting their eligibility for financial aid if the extenuating circumstances supporting their appeals are unsimilar from their previous SAP Appeal.

54. Defendant UMGC does reject SAP Appeals submitted by students, like Plaintiff Farmer, who have received unsatisfactory grades affecting their eligibility for financial aid if the

extenuating circumstances supporting their appeals are like those of their previous SAP Appeal.

55. It is not uncommon for American citizens, including its students, to suffer extenuating circumstances that maybe relate to or be like previous extenuating circumstances. For example, a impoverished person may be unable to go to work this week because he/she is sick from being unable to purchase needed medication and be unable to work two weeks later because he/she has no bus fare.  While these extenuating circumstances are similar, as they both relate to the

individual's lack of finances, it is irrational for any persons, entities, or agencies to refuse to consider one of those extenuating circumstances because they have previously considered the related or similar extenuating circumstance.

56. There is not a rationale basis for the differential treatment impoosed by the two similarly situated groups, as described in par. 53 and 54 above, by Defendant UMGC.

# VI.
## Legal Claims

57. Plaintiff Farmer alleges and asserts that Defendant UMGC has and continues to violate her rights as guaranteed by the Constitution, laws and statues of the United States, including the U.S. Constitution's Fourteenth Amendment's due process and equal protection clauses

58. Plaintiff Farmer alleges and asserts that Defendant UMGC has and continues to violate her rights as guaranteed by the Constitution, laws, and statutes of the State pf Mayland.

# VII.
# Relief Requested

Plaintiff Farmer requests and prays that this Honorable Court grant her the relief as follows:

(a).  A permanent injunction enjoining the Defendant UMGC from continuing to engage in the illegal actions and omission described herein.

(b).  Grant Plaintiff Farmer fifty thousand dollars in compensatory damages.

(c).  Grant Plaintiff Farmer fifty thousand dollars in punitive damages.

(d).  Grant Plaintiff Farmer any further and different relief this Court deems just and proper.

## VIII.
### Jury trial and Pendent Jurisdiction

1.   Plaintiff Farmer invokes this Court's pendent jurisdiction.

2.   Plaintiff Farmer demands a jury trial.

Respectfully submitted,

Dee Deidre Farmer

In Proper Persona